■ COUNTY OF RENSSELAER, Respondent, v CITY OF TROY, Appellant. — Appeal from an order of the Supreme Court at Special Term (Cholakis, J.), entered November 28, 1983 in Rensselaer County, which granted plaintiff's motion for summary judgment. ¶ Prior to 1973, the City of Troy operated under a charter granted by the New York State Legislature. Specifically contained in it was a 1918 statute enacted by the Legislature which concerned the City of Troy's responsibility to collect county and State taxes for the County of Rensselaer (L 1918, ch 209, § 2, amdg L 1915, ch 471, § 9). The statute and charter provided that the county and State taxes levied upon the properties situated in the City of Troy were to be collected by the city and that the city was to be obligated to pay the county the full amount of the levied taxes. ¶ In 1973, the City of Troy adopted a new charter pursuant to the self-governing powers contained in article IX of the New York State Constitution and the Municipal Home Rule Law. Section 15.01 of the new charter, entitled "Former charter superseded", enumerated the various New York State statutes pertaining to the operation of the City of Troy which were superseded, but did not mention chapter 209 of the Laws of 1918. ¶ By letter dated March 10, 1983, the City of Troy informed the County of Rensselaer that it would no longer adhere to the tax collection procedure contained in section 9 as amended by chapter 209 of the Laws of 1918. Prior to that time and since 1918, the city had followed the procedure of paying the county 100% of its levy each year regardless of whether the city was able to collect the taxes. During the years 1978 through 1981, the city paid to the county approximately $611,000 in taxes which the city was unable to collect. In its March, 1983 letter, the city informed the county that it would pay only that amount of the levy which the city was actually able to collect. ¶ As a result, the county commenced this declaratory judgment action challenging the city's refusal to comply with section 9 as amended by chapter 209 of the Laws of 1918. The county later moved for and was granted summary judgment. In its decision, Special Term ruled that section 9 as amended by chapter 209 of the Laws of 1918 was still in effect and that because an attempt to repeal that law by the city would affect the county's properties, affairs and government, the city could not repeal such statute unilaterally. The city has appealed. ¶ Initially, we dispose of the city's contention that section 9 as amended by chapter 209 of the Laws of 1918 is permissive rather than mandatory. The statute states, in pertinent part, that "one-half [of the county and State taxes levied] shall be paid by the city to the county on or before the first day of February and the remainder on or before the first day of August". It appears quite evident that by the use of the imperative "shall", the New York State Legislature intended that chapter 209 was obligatory on the part of the City of Troy (see *County of Orange v City of Newburgh,* 68 Misc 2d 998). In addition, the fact that the city had complied with this statute since its inception tends to discredit the city's contention that the statute was merely permissive. ¶ Requiring a more in-depth analysis is the vitality of section 9 as amended by chapter 209 of the Laws of 1918 in light of the Municipal Home Rule Law (enacted in 1963) and the subsequent adoption of a new charter by the City of Troy. ¶ Pursuant to the Municipal Home Rule Law, a municipality is empowered to adopt its own laws provided they do not conflict with the New York State Constitution or any "general law" relating to the municipality's property, affairs or government (Municipal Home Rule Law, § 10, subd 1, par [i]). A "general law" is defined as one which "in terms and in effect applies alike to all counties, all counties other than those wholly included within a city, all cities, all towns or all villages" (NY Const, art IX, § 3, subd [d], par [1]). The Municipal Home Rule Law permits a municipality to enact a local law concerning the levy, administration and collection of local taxes even though such local law does not relate to the

municipality's property, affairs or government (Municipal Home Rule Law, § 10, subd [1], par [ii], cl a, subcl [9]). ¶ Reading these sections together, we must disagree with Special Term's finding that the Municipal Home Rule Law barred the city from rescinding chapter 209 of the Laws of 1918. At the beginning of its opinion, Special Term correctly concluded that section 9 as amended by chapter 209 was a local law in that its operation was restricted to a specific locality (see McKinney's Cons Laws of NY, Book 1, Statutes, § 32, subds b, f). In addition, as Special Term noted, the city had the power to repeal, in its new charter, section 9 as amended by chapter 209 it if did not act inconsistently with the State's Constitution or any of its general laws, so long as it related to the city's "property, affairs or government" (NY Const, art IX, § 2, subd [c], par [i]). However, we cannot agree with Special Term's conclusion that because a repeal of the 1918 law would affect the county's property, affairs and government, the city could not act unilaterally. Section 10 (subd 1, par [ii], cl a, subcl [9]) of the Municipal Home Rule Law specifically permits a municipality to enact a local law concerning taxes even though such an enactment may relate to affairs other than its own (see *County of Orange v City of Newburgh, supra*, p 1001). The only limitation is that the State Legislature must not have restricted the adoption of such a local law (see *Canzano v Town of Gates*, 85 AD2d 878). The Legislature has not done so in this case. In so concluding, we find support in the fact that the purpose of the Municipal Home Rule Law is to extend the field in which a local government might legislate (see Municipal Home Rule Law § 50, subd 1; *Rozler v Franger*, 61 AD2d 46, affd 46 NY2d 760) and that the provisions of the Municipal Home Rule Law are to be liberally construed (Municipal Home Rule Law, § 51). ¶ We must still determine whether, in fact, the city repealed section 9 as amended by chapter 209 of the Laws of 1918 by its adoption of a new city charter in 1973. The city concedes that chapter 209 was not expressly repealed, but argues that section 15.01 of its charter, entitled "Former charter superseded", impliedly repeals it. We cannot agree. Subdivision 1 of section 22 of the Municipal Home Rule Law requires that any local law which supersedes a prior State statute or local law must specify the chapter, number and year of the enactment which is sought to be superseded. This was not done. Although failure to comply with subdivision 1 of section 22 of the Municipal Home Rule Law does not invalidate the enactment of a local law, the fact that the city complied with the section as to other laws but not as to section 9 as amended by chapter 209 would indicate that it was not repealed. Repeal by implication is not favored by the courts (see *People v Mann*, 31 NY2d 253, 257-258; *Matter of Stevens Med. Arts Bldg. v City of Mount Vernon*, 72 AD2d 177, 182). ¶ Although we find that the city has the power to repeal section 9 as amended by chapter 209 of the Laws of 1918, we conclude that it has not done so. ¶ We have reviewed the constitutional issue raised by the city and find that it has not proven beyond a reasonable doubt that section 9 as amended by chapter 209 of the Laws of 1918 violates the equal protection provisions of the Federal and New York State Constitutions (see *Anastasio v City of New York*, 93 AD2d 769, 770). ¶ Order affirmed, without costs. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.